IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40005-1-III |
| Respondent, | ) | |
| | ) | |
| vs. | ) | UNPUBLISHED OPINION |
| | ) | |
| H.P.,† | ) | |
| | ) | |
| Petitioner. | ) | |

COONEY, J. — Fifteen-year-old H.P. is pending trial in Benton County on charges of murder in the first degree. After extensive proceedings, the juvenile court declined jurisdiction and transfered the prosecution to superior court for H.P. to be tried as an adult. At the request of the parties, we reverse and remand for additional declination proceedings.

## FACTS

The State alleges H.P., then 14, murdered 19-year-old Julian Chavez by shooting him multiple times in the back. The State further alleges the murder was premeditated, unprovoked, and that Mr. Chavez and H.P. did not know each other. Based on video

---

† The case name has been changed to *State v. H.P.* in accordance with an amendment to RAP 3.4 and General Order of Division III, *In Re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018).

surveillance of the incident, the juvenile court characterized the murder as "violent and senseless." Clerk's Papers (CP) at 220.

The State moved to have H.P. tried as an adult in superior court. To decide the State's motion, the court considered legal memoranda filed by the parties and took evidence over two days. The court admitted 49 exhibits and heard testimony from eight witnesses. The witnesses included law enforcement officers, H.P.'s mother, his principal, juvenile detention staff, a gang expert, and an expert forensic psychologist who evaluated H.P.'s upbringing, youthfulness, maturity, and risk of dangerousness.

After considering the arguments and evidence, the court issued a 52-page letter decision granting the State's motion, which it subsequently incorporated into a written order. The letter decision identified the applicable legal standards and relevant case law, including *Kent*,[1] Division One of this court's opinion in *Quijas*,[2] and our state's recent

---

[1] In *Kent v. United States*, the United States Supreme Court discussed eight factors to consider when declining juvenile court jurisdiction. 383 U.S. 541, 566-68, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). The Washington State Supreme Court later mandated consideration of these factors in Washington's state courts. *See State v. Holland*, 98 Wn.2d 507, 515-16, 656 P.2d 1056 (1983).

[2] In *State v. Quijas*, Division One of this court held that the *Kent* factors are not exclusive and that juvenile courts must also consider questions of systemic racial bias when raised by the defendant and "supported by some evidence in the record." 12 Wn. App. 2d 363, 375, 457 P.3d 1241 (2020).

series of cases concerning youthful offenders. The decision identified the material facts, summarized the parties' arguments, and applied the law to the facts.

Disagreeing with the trial court's decision, H.P. sought discretionary review from this court. We granted discretionary review of the juvenile court's application of *Quijas* and denied review of other issues raised by H.P. After we granted discretionary review, the State filed a motion to summarily remand to the trial court for a determination of whether the juvenile declination process is unconstitutionally discriminatory against youth of color. H.P. joined the State's motion for immediate relief, but the parties disagree as to the scope of remand. We exercise our discretion to decide this motion through a written opinion. RAP 17.6(b).

ANALYSIS

The State titled its motion as a "motion for remand." In character, the motion is a motion on the merits. The motion on the merits procedure used to permit appellate court commissioners and individual Court of Appeals judges to unilaterally affirm or reverse cases that were "clearly with merit" or "clearly without merit." RAP 18.14(e)(1), (2). We suspended use of the procedure in 2015. Gen. Ord. of Div. III, *In re Mot. on the Merits Under RAP 18.14* (Wash. Ct. App. Feb. 9, 2015). Because we suspended use of RAP 18.14, this court's commissioner referred the State's motion to a panel for decision. RAP 17.2(b).

3

While we grant the State's motion, this court's general order remains in effect. Because of the time-sensitive nature of juvenile court declination decisions and appellate courts' historic inability to provide an effective remedy for improper declination, we exercise our discretion to waive our general order in this case "to serve the ends of justice." RAP 1.2(c). This opinion is not an endorsement or revival of the motion on the merits procedure or RAP 18.14.

We grant the State's motion because the juvenile court's declination order and letter ruling did not resolve the racial bias factor. The juvenile court's letter ruling summarized H.P.'s argument concerning this factor and summarized the relevant case law. CP at 214-15, 230-31, 242-43. However, the trial court did not apply the law to the facts with respect to this factor like it did for the *Kent* factors. The court did not discuss the extent to which racial bias might be present in this case either explicitly or implicitly on an individual or systemic level. The court also did not address whether its potential presence or lack of presence weighs in favor of declination, weighs against declination, or is neutral. The failure to resolve this factor requires remand for further proceedings. *Quijas*, 12 Wn. App. 2d at 376.

Having determined that remand is required, the next question is the scope of remand. In *Quijas*, the court remanded for a *Dillenburg* hearing. *Id.* (discussing *Dillenburg v. Maxwell*, 70 Wn.2d 331, 422 P.2d 783 (1967)). A *Dillenburg* hearing

occurs when the juvenile defendant has reached adulthood and it is later determined that there was a defective declination proceeding. *Id.* *Dillenburg* does not apply here because H.P. is still a juvenile. The State asks that remand be limited solely to resolving the question of racial bias. H.P. urges us to vacate the declination order and remand for a full de novo declination hearing.

Because this case is at a different procedural stage than *Dillenburg* and related cases, we are free to fashion an appropriate remedy. "The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require." RAP 12.2. The juvenile court is already well-versed in the facts of this case and facts concerning H.P.'s life and upbringing. The declination hearing was also recent in time, having been decided on August 21, 2023. Therefore, it is not necessary to remand for a de novo declination hearing. The juvenile court need only conduct a continued declination hearing on the racial bias question and amend its ruling to the extent necessary to incorporate its additional findings and conclusions. At this hearing, the court should reopen the record to additional evidence from the parties on this factor. Evidence that has already been admitted does not need to be presented again. In its discretion, the court may also reopen the record to take additional evidence related to the other factors.

5

No. 40005-1-III
*State v. H.P.*

## CONCLUSION

The juvenile court's declination order is reversed, and we remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Cooney, J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.

6